IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | CASE NO. 1:10-CV-1450 |
| v. | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | MAGISTRATE JUDGE McHARGH |
| $16,757.00 IN U.S. CURRENCY Defendant, | ) | **REPORT AND RECOMMENDATION** |
| ANTONIO CUNNINGHAM , Claimant. | ) | |

On June 30, 2010, the United States filed the instant Complaint in Forfeiture. (Doc. 1). Now pending before the Court is its *Motion For Summary Judgment*. (Doc. 33). For the reasons that follow, the undersigned recommends that the motion be **GRANTED**.

## I. BACKGROUND

The Court accurately set forth the factual and procedural background of this case in its Memorandum Opinion and Order dated January 28, 2011, ruling on Cunningham's *Motion to Dismiss* the Complaint. (Doc. 17). Therefore, the undersigned herein restates the background information found within the Court's prior ruling.

> The Cleveland Police seized $16,757.00 in U.S. Currency ("the Defendant Currency") incident to Cunningham's arrest on December 23, 2009. The U.S. Customs and Border Protection adopted the seizure of the Defendant Currency for federal forfeiture, and the U.S. Attorney's Office ("the Government") instituted the present forfeiture action under 21 U.S.C. § 881. Cunningham then filed a claim for the Defendant Currency.
>
> The Cleveland Police Department received a call from an off-duty police officer alerting the police that the driver of a silver Oldsmobile was driving recklessly. The off-duty officer also notified the police that he believed the driver

> had pointed a gun at him, and that he had observed the passenger counting a large sum of money. Approximately 15 minutes later, the police located the silver Oldsmobile in east Cleveland. The police approached the vehicle, found Cunningham in the driver's seat, and proceeded to question him.
>
> According to the Complaint, Cunningham admitted that the vehicle's center console contained marijuana when asked about the vehicle's contents. The police located the marijuana and arrested Cunningham for drug abuse and aggravated menacing. The police then conducted an inventory search of Cunningham and the vehicle. The police found $717.00 on Cunningham's person and discovered $16,040.00 in the vehicle's glove compartment. The money in the glove compartment was bundled with rubber bands in $1,000 denominations. When asked about the source of the money, Cunningham indicated he worked as a landscaper and plow operator. Cunningham also offered that "work had been a little slow."
>
> The Complaint also recounts Cunningham's drug-related criminal history. In particular, the Complaint recites: 1) a September 2001 guilty plea to preparation of drugs for sale (felony five Senate Bill 2), Cuyahoga County Case No. CR-01-410381-ZA; 2) a March 2004 guilty plea to trafficking in counterfeit controlled substances (felony five Senate Bill 2), Cuyahoga County Case CR-03-447067-B; and, 3) an Order of Forfeiture against Cunningham in Case CR-03-447067-B, resulting in the forfeiture of $993.00, a pager, and Cunningham's 1992 Pontiac. Accordingly, the Government concluded that the Defendant Currency represented the proceeds of illegal drug trafficking activities and seized the Defendant Currency.

(Doc. 17 at 1-3).

Cunningham was charged with aggravated menacing and drug abuse. Prior to the trial, Cunningham filed a motion to suppress the marijuana found in his car and statements he made to the arresting officers and sought the return of the funds taken from him. (Doc. 34, Ex. 1 at 2-5; Doc. 35, Ex. 1 at 3). The trial court denied Cunningham's request for the return of the money, ruling that it no longer had jurisdiction because the federal government had seized the property. (Doc. 35, Ex. 1 at 3). It also denied Cunningham's motion to suppress, finding that there was probable cause for Cunningham's arrest. (*Id.*) A jury found Cunningham not guilty of aggravated

menacing, (Doc. 35, Ex. 1 at 3), but the trial court found him guilty of drug abuse. (*Id*.; Doc. 33, Ex. 8).

Subsequently, Cunningham timely appealed. (Doc. 35, Ex. 1 at 3). The city of Cleveland sought to dismiss Cunningham's assignment of error relating to the trial court's refusal to order the return of the funds as moot. (*Id*.) The city stated that Cunningham filed a replevin action in the Cuyahoga County Court of Common Pleas after the trial court's suppression hearing. (*Id*.) This action was later removed to federal court and was pending before the federal court at the time of the appeal.[1] (*Id*.) The city also provided the appellate court with a certified copy of the Complaint filed in the instant matter. (*Id*.) The appellate court granted the motion to dismiss this assignment of error and only considered the issue of whether the trial court properly denied Cunningham's motion to suppress, in which it affirmed the trial court's ruling. (*Id*. at 4).

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] Non-moving parties may rest neither upon the mere allegations of their pleadings nor upon general allegations that issues of fact may exist. *See* *Bryant v. Commonwealth of Ky.*, 490 F.2d 1273, 1275 (6th Cir. 1974). The Supreme Court held that:

> . . . Rule 56(c)[3] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient

[1] Case No. 1:10-CV-453.

[2] Civil Rule 56 was totally revised by amendment effective December 2010. The Committee Note makes it clear that the standard for granting summary judgment remains unchanged. *See, e.g.*, *Diaz v. Mitchell's Salon and Day Spa, Inc.*, No. 1:09CV882, 2011 WL 379097, at *1 (S.D. Ohio Feb. 2, 2011). However, the specific language of the Rule has been modified.

[3] Now Rule 56(a).

> to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Rule 56 requires the opposing party:

> to go beyond the pleadings and by [his] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Id*. at 324.

The Sixth Circuit in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989), has interpreted *Celotex* and two related cases, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), as establishing a "new era" of favorable regard for summary judgment motions. *Stree*t points out that the movant has the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. *Street*, 886 F.2d at 1479. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. *Id.*

In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990). However, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . . . Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379-80 (6th Cir. 2007) (*citing* *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909,

916 n. 7 (5th Cir. 1992)) (alterations in original). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (*quoting Street*, 886 F.2d at 1480). But, "the mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id. (citing Anderson*, 477 U.S. at 252).

Pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), "all moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance . . . [and] all proceeds traceable to such an exchange" are "subject to forfeiture to the United States and no property right [] exist[s] in them". 21 U.S.C. § 881(a). Under the prior regulatory framework in place before CAFRA, the Government bore the initial burden of demonstrating probable cause that there was a connection between the property it sought to be forfeited and criminal activity. *U.S. v. $99,990.00 in U.S. Currency*, 69 F. App'x 757, 762 (6th Cir. 2003). After this initial showing, the burden shifted to the claimant to demonstrate by a preponderance of the evidence that the property was not subject to forfeiture. *Id*. But now, under CAFRA, the Government must show "by a preponderance of the evidence, that the property is subject to forfeiture". 18 U.S.C. § 983(c)(1). The Government can satisfy this burden by showing "that the property is traceable to [ ] drug offenses and is thus subject to forfeiture under 21 U.S.C. § 881(a)(6)." *U.S. v. $110,873.00 in U.S. Currency*, 159 F. App'x 649, 652 (6th Cir. 2005) (*quoting U.S. $174,206.00 in U.S. Currency*, 320 F.3d 658, 662 (6th Cir. 2003)). But, the Government is not required to provide direct evidence of an actual connection between the property and illegal activity. *U.S. v. Veggacado*, 37 F. App'x 189, 190 (6th Cir. 2002). "Instead,

reasonable inferences may be drawn from the evidence presented to establish a nexus between the property and drug activity." *Id*.

## III. ANALYSIS

### A. Preponderance of the Evidence

The Government has shown by a preponderance of the evidence that the money at issue is subject to forfeiture. The Government submitted the following evidence: a substantial amount of cash—a large portion of which was curiously separated into $1,000 bundles using rubber bands and contained an excessive number of twenty dollar bills, the presence of marijuana at the scene of the seizure, Cunningham's prior criminal record including drug-related offenses and prior orders of forfeitures entered against him, Cunningham's admission that he did not file federal or state income tax returns for the years 2005 through 2009, and Cunningham's inconsistent articulations of the legitimate source of the funds. The Court will address each of these factors.

With regard to the amount of cash found in Cunningham's vehicle, it does not, standing alone, demonstrate that the Defendant Currency was related to illegal drug activity. *U.S. v. $5,000 in U.S. Currency*, 40 F.3d 846, 850 (6th Cir. 1994) (Table). While this circuit has recognized that the "possession of a large amount of cash is 'strong evidence that the money was furnished or intended to be furnished in return for drugs[,]'" *U.S. v. $118,170.00 in U.S. Currency*, 69 F. App'x 714, 717 (6th Cir. 2003) (*quoting U.S. v. Currency, U.S. $42,500.00*, 283 F.3d 977, 981 (9th Cir. 2002)), this presumption has generally been applied where the funds at issue totaled substantially more than twenty thousand dollars. *E.g. U.S. v. $99,990.00 in U.S. Currency*, 69 F. App'x 757, 763 (6th Cir. 2003). For instance, the Sixth Circuit has held that "fifteen to twenty thousand dollars is hardly enough cash, standing alone, to justify more than a

suspicion of illegal activity." *$5,000.00*, 40 F.3d at 850 (*quoting* *U.S. v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1072 (9th Cir. 1994)). Thus, this factor, by itself, would do little more than raise the possibility that these funds were linked to criminal activity.

Yet, when considered in conjunction with the other evidence, the totality of the evidence presented by the Government is sufficient to prove by a preponderance of the evidence that these funds are subject to forfeiture. Of the arguments presented by the Government, most compelling is the evidence demonstrating that Cunningham cannot account for how these funds were lawfully acquired. For example, in response to the supplemental interrogatories submitted to Cunningham by the Government, he admitted that he had not filed federal or state income tax returns for the years 2005 through 2009. In *U.S. v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 662 (6th Cir. 2003), the Sixth Circuit ruled that the Government satisfied its burden of showing that funds were traceable to drug-related activity when the claimant's legitimate income was insufficient to account for the amount of money seized.

Cunningham admitted that he was not (formally) employed at any time during the years 2003 through 2009, but contends that he "sporadically" did odd jobs such as "snow removal, cutting grass and helping people move" during this period of time. (Doc. 33, Ex. 11 at 2). However, Cunningham conceded that he has no records to substantiate his claims of sporadic legitimate employment.

In order to successfully oppose the Government's motion Cunningham was required to come forward with evidentiary support beyond the pleadings to show that there is a genuine issue in dispute. *Celotex*, 477 U.S. at 324. The undersigned notes that the only evidence Cunningham submitted with his opposition brief was a copy of the transcript from the

suppression hearing held in the underlying state action.[4] Cunningham's unsupported claims regarding his employment history are inadequate to rebut the evidence offered by the Government showing that these funds were not acquired through legitimate means. As the Eleventh Circuit stated, "[t]he mere allegation of a highly unlikely legitimate source of income without some support to give the allegation credibility cannot constitute as an issue of material fact defeating summary judgment for forfeiture." *U.S. v. Two Parcels of Real Property Located in Russell County, Ala.*, 92 F.3d 1123, 1129 (11th Cir. 1996).

The Government also noted that Cunningham provided inconsistent accounts of how he acquired these funds. When the arresting officers questioned Cunningham on this issue, he stated that "he save[d] it", "his girlfriend gave it to him", and that "he d[id] landscaping and . . . plowing". (Doc. 33, Ex. 6 ("Sauterer Aff." at ¶ 2(e)). Later, in response to the Government's first set of interrogatories, Cunningham indicated that the money was his life's savings, consisting of money he earned (presumably from working) and from gambling. (Doc. 33, Ex. 10 at 1). But, in response to a subsequent interrogatory, Cunningham stated that "all of th[e] money was accumulated in 2010." (Doc. 33, Ex. 10 at 3). Cunningham later added that a portion of the funds were earned by winning the lottery and betting on basketball, football, boxing and horse racing. (Doc. 33, Ex. 11 at 2). The inconsistency between these statements tends to undermine Cunningham's contention that these funds were derived from a legitimate source. *$5,000*, 107 F.3d at 871 ("Inconsistent statements, prior drug-trafficking convictions, and carrying large sums of cash are probative.") (*citing U.S. v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 285-86 (6th

[4] The transcript is 89 pages long and Cunningham never specifically identified what portion of the transcript supported his arguments. Cunningham had "an affirmative duty to direct the Court's attention to specific portions of the record upon which [he] seeks to rely to create a genuine issue of material fact." *Primes v. Reno*, 999 F.Supp. 1007, 1010 (N.D. Ohio 1998); *see also In re St. Clair Clinic, Inc.*, No. 94-3943, 1996 WL 6531, at *2 (6th Cir. Jan. 8, 1996) (TABLE). Cunningham did not meet this burden and the Court is not required to search through 89 pages of transcript to find information that might support his claim. *Id.*

Cir. 1992)). In addition to failing to submit any records evidencing his claim that he earned money by performing odd jobs, Cunningham also failed to present any affidavits or other evidence tending to validate any one of his various accounts of how these funds were acquired by him.

With regard to Cunningham's claim that the property was earned by winning the lottery, the Government provided a letter from the Ohio Lottery Commission stating that as of September 26, 2011, it had no record of Cunningham ever winning a prize.[5] (Doc. 33, Ex. 12). In response, Cunningham conjectured that it was *possible* for him to have earned the money by engaging in other forms of gambling, such as going to casinos in one of Ohio's neighboring states. Cunningham further hypothesized that he could have won the money betting at the race tracks. But, the problem is that conjecture is not sufficient to overcome Cunningham's burden at this stage. *See $174,206.00*, 320 F.3d at 662 ("[E]vidence of legitimate income that is insufficient to explain the large amount of property seized, unrebutted by any *evidence* pointing to any other source of legitimate income or any evidence indicating innocent ownership, satisfies the burden imposed by the statute.") (emphasis added). Though there is a *possibility* that Cunningham earned a portion of this money gambling, to defeat the Government's motion for summary judgment, Cunningham needed to come forward with some type of evidence to demonstrate that there is a genuine dispute as to the source of these funds. *Celotex*, 477 U.S. at 324. Cunningham's statements alleging varying explanations as to how he acquired the money create nothing more but metaphysical doubt as to the actual source of the funds, and thus, fall short of what is required. *Matsushita*, 475 U.S. at 586; *Mich. Prot. & Advocacy Serv., Inc., v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of

[5] The letter indicated that the Ohio Lottery Commission only kept records of persons winning prizes in an amount higher than $599.00.

evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff.").

The Government also pointed to Cunningham's considerable criminal record involving five drug-related offenses.[6] Notably, in March 2004, an order of forfeiture was entered against Cunningham in the Cuyahoga County Court of Common Pleas. (Doc. 33, Ex. 3 at 3). The court ordered the following property to be forfeited from Cunningham to the State of Ohio: 1) $993.00, including $20.00 of buy money; 2) a pager; and 3) a 1992 Pontiac. "A claimant's record of drug activity is a highly probative factor in the forfeiture calculus." *$67,220.00*, 957 F.2d at 286. In light of his prior drug-related criminal history, the Government also notes that marijuana was found in Cunningham's car wherein the majority of the money was discovered. Plaintiff's contentions that the marijuana found in the car is not probative because of its small quantity and because the passenger of the car allegedly claimed ownership of it are unavailing. First, "[f]inding only small amounts of contraband does not preclude seizure." *$118,700.00*, 69 F. App'x at 716. Although there was only a relatively small amount of marijuana found within the car – seven grams – under the circumstances, the evidence as a whole is sufficient for the Government to meet its burden. *See $110,873.00*, 159 F. App'x at 652 (finding that the large amount of cash seized from the claimant, lack of income tax returns from prior years, presence of a user's amount of marijuana at the scene, the claimant's prior drug-related criminal history, and a positive alert to the currency by drug dogs all combined to establish a connection between the funds seized and drug offenses). In addition, the fact that a different person allegedly claimed ownership of the marijuana does not diminish the impact of its presence at the scene. *See $118,700.00*, 69 F. App'x at 716-17.

[6] In addition to the three convictions listed in the "Background" section, Cunningham entered pleas of no contest to drug abuse charges in February 2001 and July 2006. (Doc. 33, Exs. 1 & 4). In both instances, the court found Cunningham guilty. (*Id.*)

Courts have also recognized that funds kept in a "distinctive manner" often indicate that the money is related to drug activity. *See $99,990.00*, 69 F. App'x at 763 (finding that money heat-sealed and wrapped in tape is indicative of illegal drug activity); *see also U.S. v. $141,770.00 in U.S. Currency*, 157 F.3d 600, 604 (8th Cir. 1998) ("where. . . large sums of currency are not only stowed above the ceiling panel, but also wrapped in scented fabric softener sheets and sealed in three layers of zip-lock bags, the connection to drug trafficking cannot reasonably be disputed"). In this case, the cash was bundled with rubber bands in $1,000 stacks and concealed in a grocery bag inside Cunningham's glove compartment. Under certain circumstances, courts have found this type of distinctive wrapping to be significant when considering whether the money is related to drug activity. *See U.S. v. $13,963.00, More or Less, in U.S. Currency*, No. 3:07-040, 2009 WL 3293852, at *5 (S.D.W.Va. Oct. 13, 2009) (ruling that money, bound in rubber bands containing various denominations, and found in close proximity to drugs and paraphernalia was reflective of drug activity in light of detective's affidavit indicating that in his experience drug dealers generally carried money in this manner); *see also U.S. v. $34,000 Currency*, 288 F. App'x 139, 145 (5th Cir. 2008) (finding that cash which was vacuum-wrapped and bundled into $1,000 increments with rubber bands reflected the illegal nature of the funds given the testimony of two officers who indicated that this method was standard practice for handling drug money). Additionally, the cash seized from Cunningham included 601 twenty dollar bills, which Officer Robert Sauterer attested were frequently used to conduct illegal drug transactions. (Doc. 33, Ex. 6 at 3).

The sum of the evidence presented by the Government (the amount of cash, the way in which it was stored and concealed, the presence of marijuana, the lack of state or federal tax returns for the five years prior to the seizure, records from the Ohio Lottery Commission

indicating that it has no record of Cunningham ever winning a prize totaling more than $599.00, Cunningham's inability to provide any evidence of a legitimate source of the property, and Cunningham's criminal record involving numerous drug convictions, albeit minor) is adequate to prove by a preponderance of the evidence that this property is traceable to drug activity and subject to forfeiture. *110,873.00*, 159 F. App'x at 652-53; *$174,206.00*, 320 F.3d at 662.

B. Search of Cunningham's Vehicle

Cunningham's challenge to the legality of the search of his vehicle is without merit. The Eighth District Court of Appeals has already determined that the search of his vehicle was lawful. *Cleveland v. Cunningham*, No. 95267, 2011 WL 1812757 (Ohio Ct. App. May 12, 2011).[7] The Eighth District concluded that the arresting officers had probable cause to arrest Cunningham for aggravated menacing based on the tip they received from an off-duty officer who had informed them of a crime. *Id*. at *4. The subsequent search of Cunningham's vehicle was also lawful. Although Cunningham challenged the search pursuant to the United States Supreme Court's ruling in *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the Eighth District found that the officers' search of the vehicle comported with *Gant*. *Cunningham*, 2011 WL 1812757, at *4. The court explained that because the crime for which Cunningham was arrested involved a firearm, and because no such weapon was found on Cunningham's person, it was reasonable for the officers to search Cunningham's vehicle for the weapon. *Id*. The Eighth District added that the search was also valid under the "inventory search" exception to the warrant requirement because *Gant* did not affect this type of a search. *Id*.

---

[7] The Eighth District Court of Appeals' decision was attached to the Government's Reply brief as Exhibit 1.

C. Transfer of Funds to CBP

Lastly, in his brief, Cunningham appears to indirectly attack the legality of the Cleveland Police Department's transfer of the Defendant Currency to U.S. Customs and Border Protection officials. In making this assertion, Cunningham relies solely upon the concurrence to the Eighth District's decision. In the concurring opinion, Judge Eileen Gallagher noted that she was somewhat skeptical of the Cleveland Police Department's transfer of the money to the federal government because the arresting officers turned the money over to federal agents without getting any approval from a senior officer or anyone with legal training. She suggested that such conduct was troublesome because of financial incentives local law enforcement agencies have to transfer seized money to federal agencies. *Id.* at *7. Though Judge Gallagher's commentary is insightful, it is not controlling. The only issue before the appellate court was whether the trial court properly denied Cunningham's motion to suppress, not whether the money was properly transferred. *Id.* at *1. Thus, her opinion cannot be read as conclusive evidence that the transfer was improper.

But, assuming *arguendo* that the transfer of the money to federal agents was improper, Cunningham has not presented any case law showing that such a transfer prevented the Government from adopting the seizure and instituting forfeiture proceedings. Cunningham cites to *Harris v. City of Mayfield Heights*, No. 95601, 2011 WL 1584579 (Ohio Ct. App. Apr. 21, 2011),[8] but his reliance upon this case is misplaced. In *Harris*, the trial court ruled that it did not have jurisdiction to hear the claimant's replevin action because the defendant funds were allegedly in the possession of the federal government. *Id.* at 1. The Eighth District reversed this ruling finding that the trial court was not deprived of jurisdiction to hear the matter because, *inter*

[8] This opinion was also written by Judge Eileen Gallagher. On October 5, 2011, the Ohio Supreme Court declined review. 129 Ohio St.3d 1489 (2011). The facts in *Harris* are distinguishable from the instant case.

*alia*, the city had failed to demonstrate that the funds were lawfully seized pursuant to 18 U.S.C. § 981(b)(2)(C) of CAFRA, or, that the federal government ever adopted the funds. *Id*. at *2-5. Thus, the ultimate question *Harris* addressed was whether the trial court could exercise jurisdiction over the property.

The issue of when or whether it is proper for local law enforcement to transfer money to a federal agency is a different matter. The doctrine of adoptive forfeiture is well-recognized. *See U.S. v. Ford Coupe Auto.*, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926). Furthermore, some courts have found that a federal agency may adopt a seizure even when property is unlawfully transferred to it. *Madewell v. Downs*, 68 F.3d 1030, 1038 (8th Cir. 1995) (finding that the federal government may adopt a seizure even when the property was seized and/or transferred without authority); *U.S. v. $6,207.00 in U.S. Currency*, No. 2:08-CV-999, 2009 WL 2169167, at *7 (M.D.Ala. July 20, 2009) ("[T]he government may adopt a seizure where there was no authority to transfer the property."). The Government did not identify any case law from the Sixth Circuit addressing this issue, and it appears that the Sixth Circuit may not have directly confronted such yet. However, in light of Cunningham's failure to identify any case law supporting the opposite conclusion, and the persuasive case law from other districts, the undersigned concludes that even if the transfer of the Defendant Currency was improper – a matter not decided today — this failure would not have precluded the CBP from adopting the funds. *See Madewell*, 68 F.3d at 1038; *see also $6,207.00*, 2009 WL 2169167 at *7.

## IV. DECISION

For the reasons herein stated, it is recommended that Plaintiff's *Motion for Summary Judgment*, (Doc. 33), be **GRANTED**.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: April 12, 2012.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).